**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

_____ )
)
)
NEAL MCMAHON )
1804 LaFond Street )
St. Paul, MN  55104 )
)
JARROD ANDERSON )
2416 Mendelsson Lane )
Golden Valley, MN  55427 )
)
MAGGIE GRAY )
7059 Upper 164th Street, W. )
Rosemount, MN  55068 )
)
CAMILLA WOLKERSTORFER )
2411 Floral Drive )
White Bear Lake, MN  55110 )
)
KEVIN HUGHES )
16835 Patricia Lane )
Minnetonka, MN  55345 )
)
DANIEL GREY )
2730 Ambassador Drive )
Ypsilanti, MI  55068 )
)
    Plaintiffs. )
)
v. )                Civ. Action No.:
)
)
DELTA AIR LINES, INC., )
1030 Delta Blvd. )
Atlanta, Georgia 30320 )
)
    Defendant. )
_____ )

# **COMPLAINT**

1. This case arises from Defendant, Delta Air Lines, Inc.'s ("Delta") discriminatory denial of certain pay to Plaintiffs, Neal McMahon, Jarrod Anderson, Maggie Gray, Kevin Hughes, Angela Brewer, and Daniel Grey, flight attendants employed by Delta, based solely on their prior union status and its conditioning the cessation of such discriminatory pay on the conduct of a labor organization that was once, but is no longer, their certified bargaining representative.  By discriminating on this basis and faulting the labor organization for the continuation of disparate pay, Delta is interfering with the rights of the Plaintiffs under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151-188, to organize and designate a union of their own choosing without employer influence or coercion.

2. In 2008, Delta merged with Northwest Airlines, Inc. ("Northwest").  Pre-merger Northwest ("PMNW") flight attendants were represented by the Association of Flight Attendants-CWA, AFL-CIO ("AFA") while pre-merger Delta ("PMDL") flight attendants were not represented by a labor organization.  After the completion of the merger, the National Mediation Board ("NMB" or "the Board") conducted an election to determine the representative status of the flight attendants of the merged carrier.  The flight attendants voted narrowly against union representation and the AFA filed a motion with the NMB to investigate whether the election had been tainted by carrier interference.  If the NMB finds that Delta interfered with the flight attendants' vote, the NMB could conduct a re-run election.  That motion is still pending before the NMB (the "NMB Motion").

3. Since the election Delta has continued to compensate PMNW flight attendants based on the Northwest-AFA collective-bargaining agreement ("Northwest CBA") that was in effect prior to the election. Consequently, PMNW flight attendants are receiving wages and profit-sharing (collectively referred to as "pay" or "compensation") that is lower than the compensation that Delta is providing to the PMDL flight attendants. Delta has stated that it intends to continue these discriminatory pay practices so long as AFA pursues its charges of election interference by Delta.

4. In fact, Delta has plainly and repeatedly stated to the PMNW flight attendants that if AFA were to withdraw the NMB Motion, it would align the pay of the PMNW flight attendants with the compensation it provides to the PMDL flight attendants.

5. Delta has at no time had a legitimate business reason for taking these actions. Instead, they were designed to, and have had the effect of, convincing flight attendants that AFA is to blame for their lesser compensation and that the union is exalting its interests over theirs by pursuing interference claims with the NMB.

6. Delta's conduct violates the Plaintiffs' rights under RLA Section 152, Third and Fourth, 45 U.S.C. § 152, Third and Fourth, by (1) discriminating against them for past union membership, and (2) interfering with their right to select, and have their co-workers select, a representative free from employer interference, influence, or coercion.

7. Plaintiffs seek (1) an order compelling the Defendant to align the compensation structure for the flight attendants without regard to pre-merger status, (2) an order enjoining the Defendant from conditioning payments on the AFA's withdrawal

of its interference charge, and (3) a back-pay award compensating PMNW flight attendants for the wage increase and profit-sharing bonus that they would have received if they were provided the same treatment as PMDL flight attendants.

## PARTIES

8. Plaintiffs are all PMNW flight attendants that have been employed by the Defendant at all relevant times. Plaintiffs were represented by AFA before Northwest merged with Delta, and after the merger until November 3, 2010, when the NMB extinguished AFA's certification as their representative.

9. Plaintiff Neal McMahon resides at 1804 LaFond Street, St. Paul, MN 55104.

10. Plaintiff Jarrod Anderson resides at 2416 Mendelsson Lane, Golden Valley, MN 55427.

11. Plaintiff Maggie Gray resides at 7059 Upper 164th Street, W., Rosemount, MN 55068.

12. Plaintiff Kevin Hughes resides at 16835 Patricia Lane, Minnetonka, MN 55345.

13. Plaintiff Camilla Wolkerstorfer resides at 2411 Floral Drive, White Bear Lake, MN 55110.

14. Plaintiff Daniel Grey resides at 2730 Ambassador Drive, Ypsilanti, MI 55068.

15.     Defendant Delta is incorporated in Delaware and its principal place of business is in Atlanta, GA.  Delta is a "common carrier" within the meaning of Section 201 of the RLA, 45 U.S.C. § 181, and is therefore subject to the provisions of the RLA.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1337 because it arises under the Railway Labor Act, 45 U.S.C. §§ 151-188, a federal statute regulating interstate commerce.

17.     Venue is appropriate in this District under 28 U.S.C. § 1391 because Defendant Delta is subject to personal service in this District and/or transacts business in this District.

## STATEMENT OF FACTS

18.     In 2008, Delta and Northwest entered into a merger agreement and on October 31 2008, Delta completed its acquisition of Northwest.  As of that date the PMNW flight attendants became employees of Delta.

19.     Prior to the merger, Northwest flight attendants were represented by the AFA while Delta flight attendants were not represented by a labor organization.  Pending the scheduling and outcome of a representation election, AFA continued as the bargaining representative for the PMNW flight attendants.

20.     On July 1, 2010 the AFA filed an application with the NMB for a determination as to whether Delta and Northwest constituted a single carrier for purposes of representation of the flight attendants and if so, to hold an election for the combined craft or class of flight attendants.

21. On August 18, 2010, based on its finding that Delta and Northwest constituted a single carrier, the NMB announced that it would conduct an election for the craft or class of flight attendants. It scheduled a voting period from September 29, 2010 until November 3, 2010.

22. On November 3, 2010, the NMB announced that of 19,887 eligible voters, 9,544 votes were cast against representation and 9,216 for representation by the AFA or other unions. Based on these results, the NMB extinguished its certification of AFA as the representative of the PMNW flight attendants and dismissed its application. As of November 4, 2010, the PMNW flight attendants, like the PMDL flight attendants, are not represented by a labor union. Accordingly, the Northwest CBA is extinguished and not enforceable.

23. Since AFA's loss of its certification Delta is no longer honoring the provisions of the Northwest CBA. For example, the Defendant is no longer processing grievances filed by PMNW flight attendants and is no longer scheduling flight attendants pursuant to the Northwest CBA.

24. Delta, however, continues to pay PMNW flight attendants according to wage rates set forth in the Northwest CBA. These wage rates are lower than those Delta is paying to PMDL flight attendants.

25. On November 23, 2010, the AFA filed a motion with the NMB requesting that the Board investigate whether the election had been tainted by carrier interference. The NMB has not yet issued a decision regarding the AFA's submission.

26. On December 14, 2010, the AFA requested that Delta align the wages for all flight attendants and waived any interference claims that could be grounded in such an action.

27. On December 30, 2010, Delta replied that it would not align the wages for all flight attendants unless the AFA withdrew its election interference claims.

28. On January 18, 2011, Delta announced that all non-represented flight attendants, except the PMNW flight attendants, would receive a profit-sharing distribution of "approximately 6.5% of their eligible earnings." Delta informed the PMNW flight attendants that it intended to apply to them the profit-sharing formula set forth in the Northwest CBA. Accordingly, they would receive only "approximately 3.2% of their eligible earnings."

29. On January 6, 2011, in a weekly message to flight attendants, Delta CEO Richard Anderson stated that the company would pay PMNW flight attendants pursuant to the PMDL profit-sharing formula only if the AFA withdrew its interference claim before February 14, 2011.

30. Delta Vice President of Inflight Services Joanne Smith, in memorandums to flight attendants, has stated that the company would pay PMNW flight attendants pursuant to the PMDL profit-sharing formula only if the AFA withdrew its interference claim before February 14, 2011.

31. On February 4, 2011, AFA requested that Delta apply the profit-sharing formula for the PMDL flight attendants to PMNW flight attendants and offered to waive any potential interference claims before the NMB that could be grounded in this action.

32. On February 8, 2011, Delta replied to the AFA that it would align the profit-sharing formulas only if the AFA withdrew its NMB motion.

33. On February 14, 2011, Delta issued profit-sharing checks with the PMNW flight attendants receiving less than half the amount paid to the PMDL flight attendants.

34. On February 14, 2011, AFA notified Delta that if it completely aligned the pay, benefits and work rules of the PMNW flight attendants with those afforded to PMDL flight attendants, AFA would waive any potential interference claims with the NMB based on this alignment.

35. On February 25, 2011, Delta responded that it would not align the pay, benefits and work rules of all flight attendants despite AFA's explicit waivers.

36. Delta had no legitimate business reason to condition such alignment on AFA's withdrawal of its NMB Motion.

37. Instead, Delta had the illegitimate motives of (1) punishing PMNW flight attendants for their previous union status, (2) attempting to place blame on the AFA in particular, and labor organizations in general, for the PMNW flight attendants receiving less compensation than the PMDL flight attendants, and (3) influencing all flight attendants through a promise that they would receive higher compensation if they remained non-unionized.

38. Not surprisingly, AFA has received numerous unsolicited emails from PMNW flight attendants as a result of Delta's decision to discriminatorily compensate flight attendants. In these emails, flight attendants state that although they supported the

AFA in the previous representation election they would not support them in any subsequent representation election unless they withdrew the interference charges.

## RELEVANT STATUTORY SECTIONS

39.   RLA Section 152, Third prohibits carriers from interfering, influencing, or coercing their employees' designation of representatives.  45 U.S.C. § 152, Third.

40.   RLA Section 152, Fourth prohibits carriers from interfering "in any way with the organization of its employees, or to use the funds of the carrier in maintaining or assisting or contributing to any labor organization, labor representative, or other agency of collective bargaining, or in performing any work therefore, or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization."  45 U.S.C. § 152, Fourth.

## COUNT I
## (DISCRIMINATORY PAY PRACTICES)

41.   Paragraphs 1 to 40 are incorporated herein by reference.

42.   By denying and withholding compensation of the PMNW flight attendants based on their former union status, Delta is adversely affecting the flight attendants' support for AFA in particular and labor organizations in general.

43.   By engaging in these discriminatory pay practices and the actions set forth in paragraphs 17 to 38, Delta is violating Sections 2, Third and Fourth of the RLA.  It is (1) interfering with the right of Plaintiffs and their co-workers to designate a representative free from coercion and influence, and (2) influencing and coercing flight attendants not to organize or join a labor organization.

## COUNT II
## (INTEREFERENCE WITH RIGHT TO DETERMINE REPRESENTATIVE STATUS)

44.     Paragraphs 1 to 43 are incorporated herein by reference.

45.     By conditioning the pay of flight attendants on AFA withdrawing its NMB Motion and explicitly stating that AFA is to blame for PMNW flight attendants receiving diminished pay, Delta has caused flight attendants to believe that AFA is responsible for their loss of substantial compensation.

46.     By this conduct and the actions set forth in paragraphs 17 to 38, Delta is violating Sections 2, Third and Fourth of the RLA.  It is (1) interfering with the right of Plaintiffs and their co-workers to designate a representative free from coercion and influence, and (2) influencing and coercing flight attendants not to organize or join a labor organization.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

A.     An order compelling the Defendant to align compensation for the flight attendants without regard to pre-merger status.

B.     An order enjoining the Defendants from conditioning pay on the AFA's withdrawal of its interference charges.

C.     A back-pay award compensating flight attendants for the lower wages and profit-sharing payment that they have received on the basis of their pre-merger status.

D. An order awarding Plaintiffs their attorneys' fees and costs in this action.

E. All other relief as may be just and proper.

Respectfully submitted,

*[signature]*

Michael W. Unger (131416)
Wells Fargo Center
90 South Seventh Street, Suite 4700
Minneapolis MN 55402
(612) 336-7730
Fax: (612) 339-6686

Robert S. Clayman
Carmen R. Parcelli
Guerrieri, Clayman, Bartos & Parcelli P.C.
1625 Massachusetts Avenue, N.W., Suite 700
Washington, DC 20036
(202) 624-7400
Fax: (202) 624-7420

Dated: March 1, 2011          Counsel for Plaintiffs